IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| J.J.,[1] | § |
| | § |
|    Plaintiff, | § |
| | § |
| v. | §    5:24-CV-046-BR |
| | § |
| MARTIN O'MALLEY, | § |
| COMMISSIONER, SOCIAL SECURITY | § |
| ADMINISTRATION, | § |
| | § |
|    Defendant. | § |

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff J.J. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Defendant"), who denied Plaintiff's application for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("SSA") for lack of disability. (ECF 10-1 at 23). Before the Court is Plaintiff's Opening Social Security Brief, (ECF 12), Defendant's Response, (ECF 16), and Plaintiff's Reply. (ECF 17). After considering the pleadings, briefs, and administrative record, the court AFFIRMS the Commissioner's decision.

**I.   BACKGROUND**

Plaintiff filed a claim for Title II disability and disability insurance benefits, as well as an application for supplemental security income under Title XVI, on August 16, 2021, alleging disability due to right carpal tunnel syndrome ("CTS"), gastroparesis, and cardiac arrhythmias.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

(ECF 12 at 1). Plaintiff alleges that her disabilities began August 30, 2020. (*Id.*). At the time of filing, Plaintiff was 49 years old, but subsequently changed age categories during the adjudicatory period, and had less than a high school education. (*Id.*). Plaintiff earned her General Equivalency Diploma ("GED"). (ECF 10-1 at 42-43).

Plaintiff's application was initially denied on January 3, 2022, (ECF 10-1 at 14), and again upon reconsideration on August 27, 2022. (*Id.*) After filing a written request, a telephone hearing was held before the Administrative Law Judge ("ALJ") on April 27, 2023, due to extraordinary circumstances associated with the COVID-19 Pandemic. (*Id.*). The ALJ issued an unfavorable opinion on August 30, 2023, finding Plaintiff not disabled as defined under sections 216(i) and 223(d) of the Social Security Act. (*Id.* at 23-24).

At step one of the five-step sequential evaluation process,[2] the ALJ found that the claimant had not engaged in substantial gainful activity since August 30, 2020, the alleged onset date. (ECF 10-1 at 16). At step two, the ALJ found that Plaintiff had the following severe impairments: right CTS, gastroparesis, cardiac arrhythmias. (*Id.* at 17). At step three, however, the ALJ found Plaintiff's impairments — or combination of impairments — did not meet the severity of one of the listed impairments in the social security regulations. (*Id.*). At step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with additional

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether: (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

limitations. (*Id.* at 18). These limitations included: no climbing of ladders, ropes or scaffolds; no exposure to unprotected heights and/or dangerous moving machinery; and occasional climbing of ramps and stairs and/or occasional stooping; crouching; crawling; kneeling; or balancing on uneven, moving, or narrow surfaces. (*Id.*) Plaintiff has no past relevant work that has risen to the level of substantial gainful activity. (*Id.* at 22). At step five, the ALJ determined that considering the claimant's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that Plaintiff could perform" including a housekeeper, garment sorter, or laundry classifier. (*Id.* at 22-23). The ALJ found that Plaintiff is "capable of making a successful adjustment to other work" and therefore is not disabled as defined in the Social Security Act. (*Id.* at 23).

Plaintiff's request for review by the Appeals Council was denied on December 13, 2023. (ECF 12 at 2). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denied a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012).

When reviewing disability determinations made by the Commissioner, the court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). Substantial evidence is defined as "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the Court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Therefore, the level of review is not *de novo*. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)).

### III.  DISCUSSION

In her Complaint, Plaintiff requests that this Court reverse and remand the Agency's final decision for rehearing. (ECF 12 at 7). In her Opening Brief, Plaintiff asserts one ground for reversal and remand: the ALJ erred by rendering an RFC that does not account for all of Plaintiff's limitations, specifically for gastroparesis. (*Id.* at 4).

### A. The ALJ properly considered plaintiff's gastroparesis when assessing the RFC.

Plaintiff asserts that though the ALJ found Plaintiff's gastroparesis to be a severe impairment, the ALJ's RFC analysis failed to explain what limitations account for Plaintiff's gastroparesis and/or note any corresponding limitations associated with this condition, including "off-task behavior or absenteeism." (ECF 12 at 4). Plaintiff argues that because the ALJ must complete a function-by-function evaluation of a claimant's RFC, the RFC constitutes legal error, and the ALJ's failure to explain the lack of restrictions was not harmless. (*Id.* at 4-5). In response, the Commissioner argues that the ALJ considered Plaintiff's gastroparesis symptoms in her determination, substantial evidence supports the RFC, and that Plaintiff failed to demonstrate additional limitations were warranted outside of those currently set forth. (ECF 16 at 3-5).

The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184 (July 2, 1996). The Commissioner's findings are conclusive as long as they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ is not required to incorporate limitations into the hypothetical

questions presented to the Vocational Expert ("VE") or into the RFC determination for which he did not find support in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). "An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Kozlowski v. Colvin*, No. 4:13-CV-020-A, 2014 U.S. Dist. LEXIS 32908, at *18 (N.D. Tex. Feb. 3, 2014) (citing *Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)).

"An ALJ 'does not err solely because [she] finds an impairment 'severe' at step two but does not attribute any limitations to that impairment in assessing the claimant's RFC.'" *Jordan v. Saul*, No. 4:20-cv-00598-BP, 2021 WL 2255876, at *10 (N.D. Tex. June 3, 2021) (citing *Sarah B. v. Berryhill*, No. 1:17-CV-0080-BL, 2018 WL 3763837, at *8 (N.D. Tex. June 29, 2018), *report and recommendation adopted*, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018)). Though the ALJ "must *consider all* of a claimant's medically determinable impairments . . . this does not mean that an ALJ's RFC finding must always include limitations that are specifically linked to each impairment." *Dickson v. Colvin*, No.7:14-CV-95, 2015 WL 12552002, at *15 (S.D. Tex. June 25, 2015) (internal citations omitted). "[T]he consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than the ALJ's assessment of the claimant's RFC." *Gonzalez v. Colvin*, No.4:12-CV-641-A, 2013 U.S. Dist. LEXIS 182987, at *15 (N.D. Tex. Sep. 11, 2013), *report and recommendation adopted*, 2014 WL 61171 (N.D. Tex. Jan. 6, 2014)). "The Court has held that 'an ALJ did not err in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment' since 'the ALJ considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding.'" *Jordan*, 2021 WL 2255876, at *10 (citing

*Campbell v. Berryhill*, No. 3:15-cv-3913-N-BH, 2017 WL 1102797, at *11 (N.D. Tex. Feb. 24, 2017)).

Here the ALJ's determination that the claimant has the RFC to perform light work with the limitations currently in place is supported by substantial evidence. (ECF 10-1 at 18-21). In making her RFC determination, the ALJ noted that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (ECF 10-1 at 18). The ALJ reviewed Plaintiff's medical records and considered the findings of Plaintiff's treating sources, Plaintiff's testimony, and the findings of medical consultants in assessing Plaintiff's RFC. (*Id.* at 19-21).

In relation to the gastroparesis severe impairment, the ALJ acknowledged and considered Plaintiff's testimony, (ECF 10-1 at 19), during which Plaintiff testified that even though she takes prescription medication, approximately two to three times a month her nausea pill doesn't alleviate her symptoms, often leading to vomiting. (*Id.* at 61). The ALJ also referenced Plaintiff's testimony that she has "pain in her back and stomach all the time" which can be aggravated by cleaning up. (*Id.* at 19). However, after discussing Plaintiff's testimony, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (*Id.*).

In support of this finding, the ALJ then turned to the medical records. In her analysis, the ALJ referenced a December 2020 doctor visit during which Plaintiff reported feeling well and denied any pain around the gastric stimulator.[3] (ECF 10-1 at 20). However, June 2021 medical

---

[3] Plaintiff originally had her gastric stimulator implanted in 2016. (ECF 10-1 at 576). During this procedure, a gastric stimulator, or neurostimulator, is implanted in the lower abdominal region which "sends mild electrical pulses through the leads to stimulate the smooth muscles of the lower stomach" to "control the chronic nausea and vomiting caused by gastroparesis." Medtronic, *What is Gastric Electrical Stimulation? Gastroparesis*, https://www.medtronic.com/uk-en/patients/treatments-therapies/neurostimulator-gastroparesis/what-is-it.html (last visited Aug. 16, 2024).

records show that Plaintiff reported lower abdominal cramping, nausea, and intermittent vomiting with a bloody tinge, (*Id.* at 375), and a medical exam found mild abdominal tenderness. (*Id.* at 376). September 2021 medical records showed that an upper gastrointestinal endoscopy found a small hiatal hernia, gastropathy, and old ulceration. (*Id.* at 383). That same month, medical records show Plaintiff stated that the gastric stimulator shocks her occasionally in the stomach and plans were made for the battery to be replaced. (*Id.* at 387-388). The ALJ noted in her analysis that during that same doctor's visit, Plaintiff reported daily nausea and vomiting, yet also stated her prescribed medication helped and that she was able to eat consistently. (*Id.* at 20). The doctor's visit note states that although Plaintiff reported occasional abdominal discomfort, Plaintiff refused to quantify where or how frequently discomfort occurred. (*Id.* at 388). The ALJ also pointed to a July 2022 progress note noting that after having the gastric stimulator replaced in December 2021, Plaintiff requested the stimulator be increased off the minimum setting due to increased nausea. (*Id.* at 20). The voltage was increased to 5.2 to address these symptoms, (*Id.* at 574), which was lower than the voltage (6.8) the pacemaker was set at in June 2021 prior to the battery replacement. (*Id.* at 377). The ALJ also referenced a September 2022 annual exam during which Plaintiff's gastrointestinal exam came back normal, and no abdominal pain was reported. (*Id.* at 20). Finally, the ALJ noted that during a January 2023 medical visit at which Plaintiff again reported increased nausea and vomiting, (*Id.* at 576), Plaintiff's physical exam findings remained stable, and Plaintiff appeared well nourished. (*Id.* at 576).

    Subsequently, the ALJ considered the medical consultants' findings. (ECF 10-1 at 21). Though the ALJ noted the initial medical consultant reported "insufficient evidence to evaluate the claim," the ALJ found the determination of Laurence Ligon, M.D., a state agency medical expert, to be "more persuasive" and "more consistent with the record as a whole." In August 2022,

Dr. Ligon found that Plaintiff "is able to perform the full range of light work." (*Id*. at 21, 92). Ligon's symptom evaluation notes found that the "individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms" were not substantiated by the objective medical evidence alone and found the consistency of Plaintiff's statements regarding symptoms to be "partially consistent" considering the total medical and non-medical evidence. (*Id.* at 89). Dr. Lingon reported that Plaintiff does have exertional limitations regarding lifting and/or carrying and can stand and/or walk for about six hours in an eight-hour workday. (*Id.* at 90). Though the ALJ found Dr. Ligon's findings to be more consistent with the record, the ALJ also found that "evidence at the hearing level (including testimony)" justified a "more restrictive RFC." (*Id*. at 21).

The ALJ as factfinder has the sole responsibility for weighing the evidence, and the relative weight to be given to these pieces of evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). In essence, as described above, after analyzing Plaintiff's medical records, the Commissioner found "the medical findings discussed above indicate a functional capacity to perform at a higher level than that alleged." (ECF 10-1 at 21). Again, the ALJ is not required to incorporate limitations into the RFC determination for which he did not find support in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Thus, the ALJ did provide sufficient explanation showing she considered the severe impairment of gastroparesis upon reviewing the medical record. *See Davis v. Comm'r of Soc. Sec*., No. 4:20-cv-00117-O-BP, 2021 WL 363597, at *6-9 (N.D. Tex. Feb 3, 2021) (finding a reasonable basis for the ALJ not attributing additional limitations for Plaintiff's severe impairment where the ALJ provided sufficient explanation for consideration and found the claimant's statements about the intensity of symptoms weren't entirely consistent with the record).

After reviewing relevant medical records and acknowledging Plaintiff's testimony including that two-three times a month Plaintiff's nausea pills are ineffective, the ALJ additionally noted in her analysis that Plaintiff has been able to "manage activities of daily living, go shopping by herself . . . and work at least part-time as an attendant." (ECF 10-1 at 19-21). Though the VE acknowledged that typically an employee will not be able to miss more than one day off work per month consistently to maintain employment, Plaintiff testified in 2023 that she had been able to maintain the same part-time working schedule as before the onset of her health concerns in August 2020. (*Id.* at 45, 65). *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (noting that the ability to work despite pre-existing condition supports ALJ's finding of not disabled)). The ALJ noted that outside of the limitations in the RFC, "[Plaintiff's] frequency and level of care do not support a conclusion that she has any more significant physical symptoms or limitations" and that "there is no contraindication within the record that her conditions preclude the performance of work activity at the light exertional level." (ECF 10-1 at 21).

The Court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion" that no other additional limitations were warranted for the gastroparesis impairment in assessing the claimant's RFC. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ found that "there is no evidence of an impairment so significant as to interfere" with the RFC. (ECF 10-1 at 21). Again, "an ALJ 'does not err solely because [he] finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC.'" *See Davis v. Comm'r of Soc. Sec.*, No. 4:20-cv-00117-O-BP, 2021 WL 363597, at *6-9 (N.D. Tex. Feb 3, 2021) (citing *Sarah B. v. Berryhill*, No. 1:17-cv-0080-BL, 2018 WL 3763837, at *8 (N.D. Tex. June 29, 2018), *report and recommendation adopted*, 2018

WL 3756944 (N.D. Tex. Aug. 8, 2018)); *see also Irby v. Barnhart*, 180 F. App'x 491, 494 (5th Cir. 2006) (per curiam) (finding no error in the ALJ's RFC assessment where the ALJ did not expressly include any upper extremity severe impairment limitations, but fully considered all relevant evidence and acknowledged the impairments); *Gee v. Saul*, No. 5-19-CV-00408-JKP-RBF, 2020 WL 6588398, at *10-12 (W.D. Tex. Aug. 17, 2020) (finding no error in the ALJ's RFC assessment where the ALJ did not include additional limitations based on severe impairments and substantial evidence supported the ALJ's assessment), *report and recommendation adopted*, 2020 WL 5558089 (W.D. Tex. Sept. 17, 2020); *Adams v. Colvin*, No. 4:12-CV-490-A, 2013 U.S. Dist. LEXIS 132372, at *16-17, (N.D. Tex. Aug. 14, 2013), *report and recommendation adopted*, 2013 WL 5193095 (N.D. Tex. Sep. 13, 2013) (finding the ALJ did not err by failing to include specific limitations reflecting a severe impairment where the ALJ considered the severe impairment and incorporated limitations into the RFC assessment that were most supported by the medical record). Accordingly, there is no merit to the argument that the ALJ did not address all the severe impairments or should have included additional limitations in the RFC.

### B. Any potential error by the ALJ was harmless.

Even if Plaintiff is correct that the ALJ erred by failing to more specifically explain why additional limitations related to Plaintiff's gastroparesis were not included in the RFC, this does not end the analysis. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "[I]f the ALJ proceeds past step two, we consider whether the error was harmless . . . . Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Id.* "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgement unless the substantial rights of a party have been affected." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). The burden of showing that an error is harmful typically falls on the plaintiff. *Shinseki v.*

11

*Sanders*, 556 U.S. 396, 409 (2009). Reversal of an ALJ's decision "is appropriate only if the applicant shows that he was prejudiced." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). To show that she was prejudiced, a plaintiff must show that had the ALJ done her duty, "she could and would have adduced evidence that might have altered the result." *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir. 1984). Plaintiff argues that the ALJ's failure to explain the lack of restrictions for the Plaintiff's gastroparesis and/or add additional limitations is not harmless, pointing to the failure of the ALJ to explain why limitations were not adopted related to Plaintiff's absenteeism or off-task behavior due to occasional vomiting despite medication and surgical intervention. (ECF 12 at 5).

The ALJ posed potential limitations to the VE related to gastroparesis and its relevant symptoms, including absenteeism potentially caused by the occasional ineffectiveness of nausea medication two to three times a month by inquiring how frequently someone could be off-task and/or miss work to maintain employment. (ECF 10-1 at 65). The ALJ found that "[b]ased on the testimony of the vocational expert" and considering Plaintiff's RFC that Plaintiff "is capable of making a successful adjustment to other work" existing in significant numbers in the national economy. (*Id.* at 23). *See Carnley v. Colvin*, No. 3:12-CV-3535-N(BF), 2013 U.S. Dist. LEXIS 135593, at *27 (N.D. Tex. Aug. 30, 2013), *report and recommendation adopted*, 2013 WL 5300674 (N.D. Tex. Sept. 20, 2013) (finding no prejudice when ALJ inquired about possible limitations to the VE via hypothetical questions).

It follows from the ALJ's written decision and from the evidence considered in the record that the ALJ did in fact consider all of Plaintiff's severe impairments, including gastroparesis, when rendering an RFC. Even had the ALJ provided a more in-depth, overt discussion of the occasional ineffectiveness of her nausea pills and corresponding off-task behaviors, the analysis would not

have changed; the symptoms would have remained the same.[4] After reviewing the medical records, relevant testimony highlighting the occasional ineffectiveness of Plaintiff's nausea medication, Plaintiff's ongoing daily activities, and ability to maintain part-time employment during the period of adjudication, the ALJ found "there is no evidence of an impairment so significant as to interfere with the performance of the wide range of light work described" and that Plaintiff's "subjective complaints and limitations are simply not consistent with her admitted abilities, her largely stable clinical findings, or her longitudinal treatment record." (*Id.* at 19-21). Ultimately, the ALJ found that "considering the claimant's conditions as a whole, and to address any fluctuations of the claimant's symptoms…" the "claimant retains the ability to perform and sustain" the RFC. (*Id.* at 19-20).

This Court is not engaging in a *de novo* review of the Commissioner's decision and cannot substitute its judgment for the Commissioner's; rather, this Court looks only to whether substantial evidence supports the findings of fact made by the ALJ. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). An ALJ's error is harmless "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Steven K. v. Kijakazi*, No. 3:20-cv-01655-G-BT, 2022 WL 1056920, at *8 (N.D. Tex. Jan. 19, 2022). A reasonable mind could accept the consideration of Plaintiff's testimony, medical records and opinions, Plaintiff's self-reported daily activities, Plaintiff's continuous ability to maintain part-time employment, and finding that some of Plaintiff's statements concerning the "intensity, persistence, and limiting effects" were "not entirely consistent with the medical evidence," (ECF 10-1 at 19-21), "as more than a mere scintilla of evidence supporting the ALJ's decision" regarding the RFC limitations.

---

[4] In *Gonzalez v. Colvin*, the Court found that "[b]ecause substantial evidence supports the ALJ's determination, any error by the ALJ in failing to explain why he did not include any left-wrist limitations [deemed a severe impairment] in the RFC determination is harmless." No.4:12-CV-641-A, 2013 U.S. Dist. LEXIS 182987, at *19 (N.D. Tex. Sept. 11, 2013), *report and recommendation adopted*, 2014 WL 61171 (N.D. Tex. Jan. 6, 2014)).

*George v. Comm'r of Soc. Sec.*, No. 4:20-cv-01370-O-BP, 2022 WL 1631819, at *15 (N.D. Tex. May 9, 2022).

## IV. CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

ENTERED August 16, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE